B104 (FORM 104) (08/07)

| ADVERSARY PROCEEDING COVER SHEET<br>(Instructions on Reverse) | ADVERSARY PROCEEDING NUMBER<br>(Court Use Only) |
|---|---|
| **PLAINTIFFS**<br>American Builders & Contractors Supply Co., Inc. dba ABC Supply Co., Inc. | **DEFENDANTS**<br>Luther Daniel Maynard |
| **ATTORNEYS** (Firm Name, Address, and Telephone No.)<br>David M. Smythe<br>SMYTHE & HUFF<br>144 Second Avenue, North, Suite 333<br>Nashville, Tennessee 37201<br>(615) 255-4849 | **ATTORNEYS** (If Known)<br>David F. Cannon<br>346 21st Avenue, North<br>Nashville, Tennessee 37203-1848<br>(615) 321-8787 |
| **PARTY** (Check One Box Only)<br>☐ Debtor ☐ U.S. Trustee/Bankruptcy Admin<br>☒ Creditor ☐ Other<br>☐ Trustee | **PARTY** (Check One Box Only)<br>☒ Debtor ☐ U.S. Trustee/Bankruptcy Admin<br>☐ Creditor ☐ Other<br>☐ Trustee |

CAUSE OF ACTION (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)
**Complaint Objecting to Dischargeability; 11 USC §§ 523(a)(2)(A) and (a)(4); and 11 USC § 727(a).**

## NATURE OF SUIT

(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(1) – Recovery of Money/Property**
☐ 11-Recovery of money/property - §542 turnover of property
☐ 12-Recovery of money/property - §547 preference
☐ 13-Recovery of money/property - §548 fraudulent transfer
☐ 14-Recovery of money/property – other

**FRBP 7001(2) – Validity, Priority or Extent of Lien**
☐ 21-Validity, priority or extent of lien or other interest in property

**FRBP 7001(3) – Approval of Sale of Property**
☐ 31-Approval of sale of property of estate and of a co-owner - §363(h)

**FRBP 7001(4) – Objection/Revocation of Discharge**
☒ 41-Objection / revocation of discharge - §727(c),(d),(e)

**FRBP 7001(5) – Revocation of Confirmation**
☐ 51-Revocatin of confirmation

**FRBP 7001(6) – Dischargeability**
☐ 66-Dischargeability - §523(a)(1),(14), (14A), priority tax claims
☒ 62-Dischargeability - §523(a)(2), false pretenses, false representation, actual fraud
☒ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny

(continued next column)

**FRBP 7001(6) – Dischargeability (continued)**
☐ 61-Dischargeability - §523(a)(5), domestic support
☐ 68-Dischargeability - §523(a)(6), willful and malicious injury
☐ 63-Dischargeability - §523(a)(8), student loan
☐ 64-Dischargeability - §523(a)(15), divorce or separation obligation (other than domestic support)
☐ 65-Dischargeability – other

**FRBP 7001(7) – Injunctive Relief**
☐ 71-Injunctive relief – imposition of stay
☐ 72-Injunctive relief – other

**FRBP 7001(8) – Subordination of Claim or Interest**
☐ 81-Subordination of Claim or Interest

**FRBP 7001(9) – Declaratory Judgment**
☐ 91-Declaratory Judgment

**FRBP 7001(10) – Determination of Removed Action**
☐ 01-Determination of removed claim or cause

**Other**
☐ SS-SIPA Case – 15 U.S.C. §§78aaa *et.seq.*
☐ 02-Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case)

| ☐ Check if this case involves a substantive issue of state law | ☐ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| ☐ Check if a jury trial is demanded in complaint | Demand $65,517.53 |
| Other Relief Sought<br>**11 USC § 362 Stay Relief** | |

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | | | |
|---|---|---|---|
| NAME OF DEBTOR<br>Luther Daniel Maynard | BANKRUPTCY CASE NO.<br>03:14-bk-03954 | | |
| DISTRICT IN WHICH CASE IS PENDING<br>Middle District of Tennessee | DIVISION OFFICE<br>Nashville | NAME OF JUDGE<br>Marion F. Harrison | |
| RELATED ADVERSARY PROCEEDING (IF ANY) | | | |
| PLAINTIFF | DEFENDANT | | ADVERSARY PROCEEDING NO. |
| DISTRICT IN WHICH ADVERSARY IS PENDING | DIVISION OFFICE | NAME OF JUDGE | |
| SIGNATURE OF ATTORNEY (OR PLAINTIFF)<br><br>/s/David M. Smythe<br>David M. Smythe,<br>Attorney for Plaintiff | | | |
| DATE<br><br>August 13, 2014 | PRINT NAME OF ATTORNEY (OR PLAINTIFF)<br><br>David M. Smythe | | |

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also must complete and file For 104, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). (CF/ECF captures the information on Form 104 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs and Defendants.** Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party.** Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the law firm must sign. If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| IN RE: ) | Case No. 03:14-bk-03954 |
| ) | Chapter 7 |
| LUTHER DANIEL MAYNARD, ) | Judge Marian F. Harrison |
| ) | |
| Debtor. ) | |
| _____ ) | |
| ) | |
| AMERICAN BUILDERS & CONTRACTORS ) | |
| SUPPLY CO., INC. D/B/A ABC SUPPLY CO., ) | |
| INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Adversary No. _____ |
| ) | |
| LUTHER DANIEL MAYNARD, ) | |
| ) | |
| Debtor/Defendant. ) | |

## COMPLAINT OBJECTING TO DISCHARGEABILITY

Comes now the Plaintiff, American Builders & Contractors Supply Co., Inc. d/b/a ABC Supply Co., Inc. (hereinafter "ABC"), by and through its undersigned counsel, and requests a finding of nondischargeability with regard to certain indebtedness (hereinafter the "Debt") owed to ABC by Debtor Luther Daniel Maynard, pursuant to 11 U.S.C. §§ 523(a)(2)(A) and (a)(4), or, alternatively, for a denial of discharge pursuant 11 U.S.C. § 727(a), and would show unto the Court the following:

### I. PARTIES

1. ABC is a Delaware corporation with offices in various locations in Tennessee, including Nashville, Davidson County, Tennessee, and with principal offices in Wisconsin. ABC is an unsecured creditor of the Debtor as evidenced by its claim (Claim No. 1) in this case.

2. Defendant Luther Daniel Maynard (hereinafter "Defendant" or "Debtor") is the Debtor in the above-captioned Chapter 7 proceeding.

## II. JURISDICTION

3. This adversary proceeding is one arising in the above-captioned Chapter 7 Bankruptcy case.

4. This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334(a), and 11 U.S.C. §§ 523 and 727.

5. This adversary proceeding is a core proceeding under 28 U.S.C. § 157(b)(2), including, without limitation, subsection (I).

6. Venue is proper pursuant to 28 U.S.C. § 1409(a).

## III. STATEMENT OF FACTS

7. On March 4, 2009, Defendant executed and delivered to ABC a Credit Application (the "Credit Application") regarding the establishment of an Open Purchase Account in the name of his closely-held company, Maynard Construction & Properties, LLC (and later Maynard Construction & Properties, Inc.) (collectively, "Maynard Construction" or "Defendant's closely-held companies")[1] for roofing materials and related supplies with ABC. In that Credit Application Defendant agreed to personally guarantee payment of any and all

---

[1] The Open Purchase Account was originally established in the name of Maynard Construction & Properties, LLC, which was chartered with the Tennessee Secretary of State (SOS Control No. 590784), on November 20, 2008. Six (6) months after opening the ABC open purchase account, on December 2, 2009, Defendant Maynard Construction & Properties, Inc. was chartered with the Tennessee Secretary of State (SOS Control No. 618863). Despite the provisions of ¶ 6 of the Credit Agreement, Defendant and Maynard, LLC <u>never</u> notified ABC in writing of a change in buyer's name, address, ownership or form of business entity. Defendant later testified under oath that the formation of Maynard, Inc. was only done for insurance purposes and that he considered the two (2) corporations to be the same and that materials were ordered and used by initially by Maynard, LLC and later by Maynard, Inc. on the ABC account. In any event, the ABC invoices and statements for all purchases on the open account simply stated the buyer was "Maynard Construction" - - the name as it appears on the ABC Credit Application.

2

indebtedness owed to ABC under the Open Purchase Account being established. A copy of the Credit Application is attached as **Exhibit 1**.

8. In the Credit Application, Defendant agreed to be bound by ABC's Credit Agreement and Purchase Agreement (the "Credit Agreement" and "Purchase Agreement"), copies of which are attached as **Collective Exhibit 2**.

9. In the Credit Agreement, Defendant and the closely-held company, Maynard, LLC agreed (in paragraphs 1 and 2) to pay monthly late payment charges of 1.5% (the service charge) and agreed to pay all costs of collection occurred by ABC, including ABC's reasonable attorneys' fees, in the event of any Open Purchase Account default. Per ABC's invoices, any credit purchaser of materials (whether it was Maynard, LLC or later Maynard, Inc.) also agreed to certain Purchase Agreement Terms and Conditions on the back of each ABC invoice (copy of April 23, 2012 ABC unpaid invoice to Maynard Construction with reverse side Purchase Terms is attached as **Exhibit 3**).[2]

10. After receiving the Credit Application, ABC opened an Open Purchase Account for Defendant's closely-held company, which then proceeded to buy roofing materials and other related materials from ABC on this Open Purchase Account.

11. The ABC account of Maynard Construction was used satisfactorily for years until a March 2, 2012 hail storm (the "Storm") which adversely affected numerous roofs in the Nashville area.

12. At the time of the Storm, Defendant and his son, Scott Maynard, who owned a different construction company, Scott Maynard Construction, LLC, agreed with each other that

---

[2] ABC never received any written objection to these ABC invoice Purchase Terms from Defendant or his closely-held company and per Tenn. Code Ann. § 47-2-207, these invoice terms of sale of goods from ABC to Maynard Construction became part of the contract of sale between those parties and those invoice terms expressly indicate that ABC's Credit Agreement (Exhibit 2) was incorporated into those sale contracts.

the ABC open account of Maynard Construction would also be used to purchase roofing materials for numerous hail damage roof jobs being contracted by Scott Maynard.

13. By agreement between Defendant and Scott Maynard, Defendant himself ordered most of the materials for Scott Maynard Construction on the ABC open account with instructions from Defendant to ABC that Scott's name would be put on the invoice or order and they would then get together at the end of each month to settle up. Occasionally during this time, Scott Maynard would call in orders for materials directly to ABC on the Maynard Construction open account. Both Defendant and Scott Maynard advised ABC's salesman, Jeff Sexton, of this arrangement and that roof materials would be ordered for Scott Maynard and/or Scott Maynard Construction on the Maynard Construction open account. In reliance on the representations of Defendant, ABC proceeded to sell goods to Defendant, Defendant's closely-held companies, and to Scott Maynard and Scott Maynard Construction.

14. In connection with the foregoing arrangement, Scott Maynard paid ABC directly for some of the materials being ordered for his use on the Maynard Construction account, but primarily Scott Mayard paid for roof materials ordered for he and his customers' benefit on the Maynard Construction account by giving Defendant insurance checks Scott Maynard was receiving for his hail damage roof jobs, and Defendant would then pay the Maynard Construction ABC open account balance. Defendant received these insurance checks from the Scott Maynard roof jobs as earmarked funds with an attendant obligation to pay for the materials provided for improvements to those specific roof jobs.

15. On April 9, 2012, Maynard Construction fully paid its ABC statement balance as reflected on ABC's March 31, 2012 account statement with its check no. 12018 for $46,321.28. A copy of this March 31, 2012 ABC statement and April 9, 2012 Maynard payment check for

4

$46,321.28 are attached as **Collective Exhibit 4**. Ten (10) of the invoices on this paid March 31, 2012 statement had Scott Maynard's name on them for materials ordered for Scott Maynard's and/or Scott Maynard Construction's hail roof jobs.

16. After the April 9, 2012 payment of $46,321.28 paying the March 31, 2012 Maynard Construction account statement in full, Defendant and Scott Maynard continued to order significant amounts of roofing materials on the ABC open account of Maynard Construction in the months of April and May 2012. Despite monthly ABC statement balances of $95,628.79 in April 2012 and $83,110.68 in May 2012, ABC received only three (3) further account payments from Maynard Construction on its account ($40,000.00 on May 10, 2012, $10,000.00 on May 14, 2012 and $7,000.00 on July 20, 2012) while ABC received only one (1) direct payment from Scott Maynard ($10,000.00 on June 11, 2012) on the account. None of these four (4) final payments received by ABC on the Maynard Construction open account identified any specific open invoices that were being paid or instructed ABC how to apply the payments on the open account balance. Per ABC's custom and practice (and the usual custom and practice in the construction materials supplier industry), those unspecified payments on account were applied by ABC to the oldest open invoices first on the Maynard Construction account. Copies of the April and May 2012 ABC account statements and these four (4) unspecified part payment checks are attached as **Collective Exhibit 5**.

17. After all payments (or returned materials) were credited by ABC to the Maynard Construction open account, the ABC account had a past due unpaid balance of $65,517.53 as of March 5, 2013, and, on March 14, 2013, ABC filed suit in Davidson County Chancery Court Case No. 13-353-IV (the "Chancery lawsuit") against Defendant and his two (2) closely-held companies to collect this open account balance due. A copy of this Chancery Complaint is

attached as **Exhibit 6**. (A copy of Maynard Construction's March 5, 2013 ABC account statement reflecting this $65,517.53 account balance due is attached to the Complaint as Exhibit 3.)

18. On April 30, 2013, Defendant and his closely-held company Maynard Construction & Properties, Inc. ("Maynard, Inc.") filed their Answer to the Chancery Complaint, in which they denied owing the $65,517.53 account balance to ABC, but Defendants raised no affirmative defenses in that Pleading. A copy of this Answer is attached as **Exhibit 7**.

19. In a Response Opposing ABC's Motion for Summary Judgment in the Chancery lawsuit, Defendant asserted for the first time in the Chancery lawsuit that a number of the open and unpaid invoices totaling $65,517.53 reflected on ABC's March 5, 2013 statement (Exhibit 3 to ABC's Chancery Complaint attached as **Exhibit 6**) were not ordered by him nor were they his responsibility.[3]

20. Not only did Defendant contend in the Chancery lawsuit that numerous unpaid invoice charges on the Maynard Construction account were not ordered by him or were not his responsibility, Defendant also has testified under oath in the Chancery lawsuit that prior to the June 2012, ABC account statement he was "unaware" that Scott Maynard had ordered materials on the Maynard Construction open account.

21. Defendant also repeatedly denied under oath in the Chancery lawsuit that he ever told Jeff Sexton, ABC's salesman, that Scott Maynard had authority to charge materials on the Maynard Construction account.

---

[3] See a 4 pp. spreadsheet Defendant later prepared and provided in discovery in the Chancery lawsuit (**Collective Exhibit 8**) where Defendant "reviewed" ABC invoices from March 2, 2012 through July 12, 2012 and where he asserted what invoices were "his" responsibility. It should be noted that p. 1 of this "spreadsheet" includes all the March 2012 ABC statement invoices which Defendant and his closely-held company had already fully paid on April 9, 2012. By fully paying all charges through March 2012, Defendant ratified all open account purchases on the Maynard Construction account and waived any claim that any of the charges on that statement were somehow unauthorized.

6

22. Defendant's sworn testimony about Scott Maynard having no authority to charge materials on the Maynard Construction open account in the Spring of 2012 is totally at odds with the sworn testimony of Scott Maynard on this issue, and also will be totally at odds with the testimony of Jeff Sexton, ABC's salesman, on this issue.

23. At no time did Defendant or Maynard Construction ever notify ABC in writing that any invoice charges on the Maynard Construction ABC open account in the Spring of 2012 were disputed or unauthorized.

24. Defendant testified under oath in the Chancery lawsuit that he was the one who received and reviewed the monthly ABC account statements and it was he who decided how much to pay on the ABC statement.

25. During discovery in the Chancery lawsuit, neither Defendant nor his closely-held companies, Maynard, LLC and Maynard, Inc., ever provided any records, documents of any consequence, including any job files or contracts for the February 2012 to June 2012 hail storm time period, despite repeated requests and court orders to do so. On May 12, 2014, counsel for ABC sent a detailed letter to Ensley Hagan, Defendants' counsel in the Chancery lawsuit, detailing all of Defendants' prior discovery failures and which included a Second Request for Production of Documents in the Chancery lawsuit which requested: all contracts, all bank account statements, all cancelled checks, all deposit slips, all copies of checks received from customers and/or insurance companies, copies of all payments made to subcontractors or independent contractors, copies of all deposit slips evidencing deposits made to Defendants' bank accounts for the February 1, 2012 through June 30, 2012 time period and for all job files of for this time period. A copy of this May 12, 2014 letter is attached hereto as **Exhibit 9**. None of

7

Case 3:14-ap-90336 Doc 1 Filed 08/13/14 Entered 08/13/14 14:25:10 Desc Main
Document Page 9 of 19

these requested documents were ever produced by Defendant or his closely-held companies in the Chancery lawsuit.

26. Instead of responding to the requested discovery in the Chancery lawsuit, Defendant filed a Petition for Relief under Chapter 7 of the U.S. Bankruptcy Court in the Middle District Bankruptcy Courts on May 16, 2014.

27. Subsequently, on July 30, 2014, an Agreed Judgment was entered in favor of ABC against Maynard, LLC and Maynard, Inc. in the Chancery lawsuit. ABC's remaining claims against Defendant in the pending Chancery lawsuit have been stayed as a result of the automatic stay imposed by operation of 11 U.S.C. § 362. A copy of this Agreed Judgment for $70,517.53 against the closely-held companies filed in the Chancery lawsuit is attached hereto as **Exhibit 10**.

28. Prior to the entry of this Agreed Judgment, Defendant's closely-held companies (and Defendant) failed to produce any of the books or records relating to the unpaid ABC open account purchases in the Spring of 2012, despite written discovery requests and orders entered in the Chancery lawsuit pertaining to the same.

29. Upon information and belief, Defendant, as the controlling member / shareholder of his closely-held companies, concealed and / or destroyed its books and records related to the hail storm job invoice purchases in the Spring of 2012, and Defendant testified falsely under oath that he never had an agreement with his son, Scott Maynard, wherein Scott Maynard was authorized to make purchases of roofing materials on the Maynard Construction ABC open account during this time period, and that Defendant and his son would "settle up" at the end of the month to pay the ABC invoices.

8

30. By failing to disclose to ABC anything about Scott Maynard's insurance checks during discovery in the Chancery lawsuit, Defendant purposefully concealed the fact that he was being given numerous insurance checks by his son, Scott Maynard, in the Spring of 2012 to pay for ABC invoices on the Maynard Contract account specifically ordered for the benefit of Scott Maynard and his customers.

31. To date, neither Defendant nor his closely-held companies have ever provided to ABC copies of any of the earmarked insurance checks given to Defendant by Scott Maynard per their agreement to pay for the specific roof jobs of Scott Maynard's customers nor had Defendant or his closely-held companies provided copies of any of the earmarked checks from their customers to pay for labor and materials admittedly purchased for specific roof jobs ordered by Defendant in April and May 2012, but which were never properly paid or applied by Defendant to material balances owed to ABC for any of those specific jobs.

32. Defendant also testified under oath in discovery in the Chancery lawsuit that he owned both 5917 New Hope Court, Hermitage, Tennessee and 94 Jay Street, Nashville, Tennessee. A portion of the transcript of Defendant's November 6, 2013 sworn testimony is attached hereto as **Exhibit 11**. Defendant's Petition and Schedules, however, lists neither of these two (2) real properties, and, instead Defendant listed only a one-half (1/2) tenant in common ownership interest in a different real property located at 113 Jay Street, Nashville, Tennessee.

33. Defendant also failed to disclose in his Bankruptcy Petition and Schedules that he is the holder of a Deed of Trust dated October 1, 2013 on real property known as Lot 5B, Belinda Parkway, in Mount Juliet, Tennessee, which was pledged to him by Legend's Carwash

9

of Providence, Inc. to secure a Note payable to Defendant in the amount of $50,000.00. A copy of the Deed of Trust is attached hereto as **Exhibit 12**.

34. Defendant also apparently failed to disclose in his Bankruptcy Petition and Schedules that he is in possession of (and is now apparently the owner of) a 2006 pickup truck formerly in the name of Maynard, Inc., which his attorney in the Chancery lawsuit, Mr. Hagan, indicated "was exempted" by Defendant in this Bankruptcy case. A copy of a July 11, 2014 letter from Mr. Hagan to ABC's counsel in this regard is attached hereto as **Exhibit 13**.

## IV. CAUSES OF ACTION

35. Pursuant to 11 U.S.C. § 523(a)(2)(A), a discharge under 11 U.S.C. § 727 does not discharge a debtor from any debt for "money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by false pretenses, a false representation or actual fraud,...."

36. Defendant's deceptive and misleading actions in advising ABC that his son, Scott Maynard, was authorized in the Spring of 2012 to make purchases on the open account, and then his full payment of the March ABC statement balance on April 8, 2012 (which included 10 invoices clearly marked as Scott's), and then running up the account balances owed in April and May 2012, and only then later refusing to pay the balance of the April and May 2012 charges in connection with the same and in also denying any such authorization for said charges under oath, created a debt to ABC obtained by false pretenses, false misrepresentation, or actual fraud, from which Defendant should not be discharged per 11 U.S.C. § 523(a)(2).

37. Pursuant to 11 U.S.C. § 523(a)(4), a discharge under 11 U.S.C. § 727 also does not discharge a debtor from any debt for "fraud or defalcation while acting in a fiduciary capacity, embezzlement,...." (emphasis added).

38. In this case, Defendant is guilty of an embezzlement because he knowingly misappropriated earmarked funds received from both Maynard Construction customers and from his son Scott's customers (and/or customers of Scott Maynard Construction) which were required to be paid by Defendant to ABC per Tenn. Code Ann. § 66-11-138.

39. Tenn. Code Ann. § 66-11-138 provides:

> (a)(1) Any prime contractor or remote contractor who, with intent to defraud, uses the proceeds of any payment made to that contractor on account of improving certain real property for any purpose other than to pay for labor performed on, or materials, services, equipment, or machinery furnished by that contractor's order for the real property, and overhead and profit related thereto, while any amount for the labor, materials, services, equipment, machinery, overhead, or profit remains unpaid shall be liable to an injured party for any damages and actual expenses incurred, including attorneys' fees, if the damages and expenses incurred are the result of the misapplication of the payment.
>
> (2) A violation of subdivision (a)(1) is a Class E felony.

40. In this case, Defendant knowingly failed to properly apply the earmarked funds received from both Maynard Construction customers and from his son Scott's customers (and/or customers of Scott Maynard Construction) to pay ABC for the specific unpaid materials detailed on the unpaid invoices for April and May (see Exhibit 3 ABC statement attached to **Collective Exhibit 5**) for those customers' specific roof jobs. This knowing misapplication of earmarked customer funds is a Class E felony under Tennessee law and constitutes an embezzlement for purposes of 11 U.S.C. § 523(a)(4), sufficient except the debt from any discharge of Defendant under 11 U.S.C. § 727.

41. Alternatively, under 11 U.S.C. § 523(a)(4), a debt can also be nondischargable if the debt resulted from a "defalcation while acting in a fiduciary capacity" when a preponderance

of the evidence establishes (1) a preexisting fiduciary relationship; (2) a breach of that relationship; and (3) resulting loss.

42. To the extent applicable, Defendant had a statutory obligation to pay suppliers (like ABC) the monies paid or given to him for various real property improvement projects pursuant to Tennessee's Prompt Pay Act of 1991. (See Tenn. Code Ann. §§ 66-34-301 and 401). In addition, to this obligation, Tenn. Code Ann. § 66-34-304 provides:

> Any sums received by the contractor as payment for work, services, equipment and materials supplied by the subcontractor, materialman or furnisher for improvements to real property shall be held by the contractor in trust for the benefit and use of such subcontractor, materialman or furnisher and shall be subject to all legal and equitable remedies.

43. Tenn. Code Ann. § 66-34-304 creates an express, technical and / or statutory trust, and therefore imposed fiduciary duties on Defendant under Tennessee law within the contemplation of 11 U.S.C. § 523(a)(4).

44. Defendant's failure to pay ABC the amounts due under the contracts constitutes fraud and a breach of that fiduciary relationship within the contemplation of 11 U.S.C. § 523(a)(4).

45. Defendant's fraud has caused a loss to ABC as evidenced by the Debt, which should be excepted from discharge pursuant to 11 U.S.C. § 523(a)(4).

46. Alternatively, Defendant should be found vicariously liable for his closely-held companies' breach of fiduciary duty, because both companies were controlled by Defendant as their managing member / shareholder.

47. Defendant's closely-held companies should also be found to be alter egos of Defendant, as Defendant and the closely-held companies were at all relevant times one and the same entity. Defendant's actions in allowing third parties to use the Maynard Construction ABC

Open Purchase Account, resulted in the "deepening insolvency" of these closely-held companies (and Defendant), and Defendant should be found to be in breach of the fiduciary duty owed to creditors by Defendant and his companies.

48. Specifically, by allowing Defendant's son (Scott Maynard) and / or Defendant's son's company (Scott Maynard Construction, LLC) to purchase goods on Defendant's / the companies' credit, and increasing Defendant's / the companies' liabilities while providing no benefit whatsoever to Defendant and / or his companies constituted a material detriment to Defendant, his companies and, ultimately, to their creditors, including ABC.

49. Alternatively, Defendant should be denied any discharge in this case pursuant to 11 U.S.C. § 727. Denial of discharge is appropriate where the debtor has: "transferred, removed, destroyed, mutilated, or concealed" property of the debtor, within one year before the date of the filing of the Petition, or property of the estate after the date of the filing of the Petition, "with intent to hinder, delay, or defraud a creditor or officer of the estate charged with custody of property under [Title 11]" (See 11 U.S.C. § 727(a)(2)); "concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained" (See 11 U.S.C. § 727(a)(3)); "knowingly and fraudulently, in or in connection with the case . . . made a false oath or account" or "withheld . . . any recorded information, including books, documents, records, and papers, relating to the debtor's property or financial affairs" (See 11 U.S.C. § 727(a)(4)); or "failed to explain satisfactorily . . . any loss of assets or deficiency of assets to meet the debtor's liabilities (See 11 U.S.C. § 727(a)(5)).

50. As indicated above, Defendant failed to disclose in his Petition and Schedules and at his § 341 Creditors' Meeting (as well as his November deposition in connection with the

13

Chancery lawsuit) that he is the holder of a Deed of Trust dated October 1, 2013, on real property known as Lot 5B, Belinda Parkway, in Mount Juliet, Tennessee, which was pledged to him by Legend's Carwash of Providence, Inc. to secure a Note payable to Defendant in the amount of $50,000.00. Accordingly, denial of Debtor's discharge may be warranted pursuant to 11 U.S.C. §§ 727(a)(2), (3), and/or (4).

51. Defendant also either: (1) perjured himself by testifying under oath that he owned both 5917 New Hope Court, Hermitage, Tennessee and 94 Jay Street, Nashville, Tennessee and omitting his ownership interest in real property located at 113 Jay Street, Nashville, Tennessee; or (2) gave false oath in his Petition and Schedules and at his § 341 Creditors' Meeting wherein he omitted and / or denied any ownership interest in the 5917 New Hope Court, Hermitage, Tennessee and 94 Jay Street, Nashville, Tennessee properties, and, instead listed and testified as to his one-half (1/2) tenant in common ownership interest in real property located at 113 Jay Street, Nashville, Tennessee; or (3) he failed to indicate at the Creditor's Meeting or in his Petition and Schedules that he was now the owner of a 2006 pickup truck formerly owned by Maynard, Inc. As a result, Defendant may not be entitled to a discharge pursuant to 11 U.S.C. § 727(a).

52. Defendant's failure to produce any documents to account for any earmarked insurance checks received from his son, Scott Maynard, in the Spring of 2012 in payment of open account purchases or earmarked checks from any of Defendants' companies' customers for their roof jobs in the Spring of 2012, also constitutes a failure to disclose assets and transactions of the closely-held companies. If, as averred above, Defendant's closely-held companies are alter egos of Defendant, Defendant's failure to disclose information regarding the assets and

14

Case 3:14-ap-90336    Doc 1    Filed 08/13/14    Entered 08/13/14 14:25:10    Desc Main
Document      Page 16 of 19

transactions of the Maynard Construction companies is simultaneously a failure to disclose assets and transactions of Defendant in violation of 11 U.S.C. §§ 727(a)(2), (3) and / or (4).

53. If, as averred above, Defendant's closely-held companies are alter egos of Defendant, Defendant's actions by allowing third parties to use the Open Purchase Account (and/or concealing records pertaining to the same) would constitute undisclosed fraudulent transfers to Defendant's son, Scott Maynard, Scott Maynard Construction, LLC, and / or other, unknown third-party transferees, in violation of 11 U.S.C. §§ 727(a)(2), (3) and / or (4).

## V. **RELIEF REQUESTED**

WHEREFORE, premises considered, ABC requests that the Court:

A. Hold Defendant liable under Tennessee law for the full amount of the Debt, as evidenced by ABC's Claim, plus pre-judgment interest, per the provisions of Tennessee Law and Federal Rule of Bankruptcy Procedure 7008(b);

B. For an express determination by the Court that the Debt to ABC be deemed nondischargable pursuant to 11 U.S.C. § 523(a)(2)(A) and / or § 523(a)(4) and that such debt be excepted from any discharge awarded to Defendant in this case and / or any other bankruptcy proceeding of Defendant.

C. In such event, that the Court also grant ABC Stay Relief under 11 U.S.C. § 362 to allow ABC to proceed to Judgment against Defendant in the pending Chancery lawsuit for the Debt amount deemed nondischargable by the Court in this case so ABC can issue any process necessary in the Chancery lawsuit to collect any such nondischargable Debt from Defendant.

D. That, alternatively, the Court deny Defendant a discharge in this or any other bankruptcy proceeding of Defendant pursuant to 11 U.S.C. § 727 for reasons set forth herein.

E. Grant ABC such other and further relief as this Court shall deem appropriate.

Respectfully submitted,

/s/ David M. Smythe
David M. Smythe (BRP No. 10114)
Smythe & Huff
144 Second Avenue North
The Pilcher Building, Suite 333
Nashville, TN 37201
(615) 255-4849

Attorney for American Builders & Contractor's
Supply Co., Inc. d/b/a ABC Supply Co., Inc.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to those parties specifically requesting electronic service and also served via U.S. Mail, postage prepaid to the following parties:

David F. Cannon, Esq.
346 21st Avenue North
Nashville, Tennessee 37203-1848

Daniel Luther Maynard
d/b/a Maynard Construction
5917 New Hope Court
Hermitage, Tennessee 37076

U.S. Trustee
Office of the United States Trustee
701 Broadway, Suite 318
Nashville, TN 37203-3966

Eva Marie Lemeh, Esq.
4300 Kings Lane
Nashville, Tennessee 37204

on this the 13th day of August, 2014.

/s/ David M. Smythe
David M. Smythe